IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WILLIAM T. JENSEN,
      Petitioner,

v.                                   Case No.  3:09cv113/MCR/CJK

KENNETH S. TUCKER,[1]
      Respondent.
_____

## REPORT AND RECOMMENDATION

      Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 25).  Petitioner has replied.  (Doc. 32).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

BACKGROUND AND PROCEDURAL HISTORY

      On June 8, 2004, petitioner was charged in the Circuit Court for Okaloosa County, Florida, Case No. 04-CF-1127, with one count of sexual battery on a victim

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

less than 12 by a defendant older than 18, a capital felony punishable by a mandatory term of life imprisonment (Count I); and one count of lewd or lascivious molestation of a victim less than 12  by a defendant older than 18, a first degree felony punishable by 30 years imprisonment (Count II).  (Doc. 25, Ex. B).[2]  The victim was petitioner's 6-year old great-niece.  On November 22, 2004, petitioner entered counseled guilty pleas to the lesser included offense of attempted sexual battery, and to the charged offense of lewd or lascivious molestation.  (Doc. 1, p. 1; Doc. 25, Ex. C and Ex. E, pp. 137-46).  Petitioner was sentenced, consistent with the plea agreement, to 20 years imprisonment followed by 7 years probation.  (Ex. C; Ex. E, pp. 144-45).  Judgment was rendered December 29, 2004.  (Ex. C, p. 1).  Petitioner did not appeal the judgment and sentence.  (Doc. 1, p. 2).

On November 22, 2005, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising six grounds.  (Ex. E, pp. 1-56).  The trial court summarily denied one ground, (Ex. E, pp. 76-78), and denied the remaining five grounds after an evidentiary hearing. (Ex. E, pp. 129-147, 152-219).  The Florida First District Court of Appeal ("First DCA") summarily affirmed without written opinion. *Jensen v. State*, 1 So. 3d 179 (Fla. 1st DCA 2008) (Table).  The mandate issued February 19, 2009.  (Ex. M).

On February 13, 2009, petitioner filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. N).  The trial court denied the motion on February 24, 2009.  (Ex. O).

Petitioner filed his *pro se* federal habeas petition on March 16, 2009.  (Doc. 1).

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 25, unless otherwise noted.

The petition raises five grounds for relief:  (1) petitioner's pleas were involuntary because petitioner is borderline mentally retarded and did not understand the consequences of his pleas; (2) trial counsel was constitutionally ineffective for failing to move to suppress petitioner's confession on grounds of petitioner's incompetence and coercion, (3) trial counsel was constitutionally ineffective for coercing petitioner to enter guilty pleas under threats of quitting petitioner's case, that petitioner would spend his life in prison, and that petitioner would be castrated, (4) trial counsel was constitutionally ineffective for failing to move for a speedy trial, and (5) counsel was constitutionally ineffective for failing to familiarize himself with petitioner's case to prepare the case for trial.

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr*., 608 F.3d 1313, 1315 (11th Cir. 2010).

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737-38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case"

or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009)*.*

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the

petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. 930, 127 S. Ct. 2842, 2858.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

Within this framework, the court will review petitioner's claims.

## ANALYSIS

Ground 1     "The State Trial Court Committed Fundamental Constitutional Error, Accepting Petitioner's Plea Which Was Involuntarily Entered"  (Doc. 1, p. 4)

Petitioner claims his plea was involuntary because he is borderline mentally retarded and "did not understand the plea ramifications, having limited intelligence." (Doc. 1, p. 4).  Respondent concedes petitioner presented this claim to the state courts in the Rule 3.850 proceeding.  (Doc. 25, pp. 16-21).  Respondent contends petitioner is not entitled to federal habeas relief, because the state court's rejection of petitioner's claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.  (Doc. 25, pp. 16-21).

A.     Clearly Established Federal Law

The standard for determining the validity of a guilty plea is "whether the plea

represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. *Boykin*, 395 U.S. at 243, 89 S. Ct. 1709. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970); *Godinez v. Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (reiterating that a defendant may not plead guilty unless he does so "competently and intelligently"). The test for incompetence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469. Relevant circumstances include the petitioner's statements during the plea colloquy:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary

dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977).

      B.     State Court Record of Petitioner's Guilty Plea

          i.     <u>Written Plea Agreement</u>

Petitioner signed a written plea agreement on November 21, 2004, the day before petitioner entered his guilty pleas in open court. (Ex. E., pp. 137-141). The plea agreement provided that in exchange for petitioner pleading guilty to the lesser included offense of attempted sexual battery and to the charged offense of lewd or lascivious molestation, the State would recommend a sentence of 20 years state prison followed by 7 years probation. (*Id*., p. 137). The agreement further provided, among other things, that petitioner would be designated a sexual predator and successfully complete sexual offender treatment. (*Id*.). The agreement contains a "Certification of Defendant," in which petitioner certified that: (1) petitioner understood the charges set forth in the information and understood the offenses to which he was pleading guilty; (2) petitioner understood all terms, conditions, obligations and rights of the plea agreement; (3) petitioner's attorney explained to petitioner each term, condition, obligation and right set forth in the plea agreement; (4) petitioner could read or, if unable to read, was read everything in the plea agreement and petitioner understood it; (5) petitioner was satisfied with his attorney's advice and services; and (6) petitioner's attorney did not compel or induce petitioner to enter into the plea agreement by any force, duress, threats or pressure. (*Id*., p. 138). Also contained in the "Certification of Defendant" is the following statement appearing in bold font: "I understand that I am giving up the following rights." This statement is followed

by the enumeration of nine constitutional rights.  (*Id.*).  Petitioner further certified that he reviewed the facts of his case with his attorney and that petitioner agreed and stipulated there were sufficient facts available to the State to justify petitioner's guilty pleas.  (*Id.*).  Petitioner certified that he entered the plea agreement "fully and voluntarily of my own accord and with full understanding of all matters set forth in the information or indictment and in this Sentence Recommendation."  (*Id.*).

      ii.   <u>Plea Colloquy</u>

Petitioner's trial counsel informed the court of the plea agreement and petitioner's desire to enter guilty pleas.  The trial court conducted the following colloquy:

THE COURT:  Mr. Jensen, if you'll raise your right hand?

DEFENDANT SWORN BY THE COURT

THE COURT:  Age?

MR. JENSEN:  Fifty-eight.

THE COURT:  Education level?

MR. JENSEN:  Tenth grade.

THE COURT:  Did you read, understand and sign your plea agreement?

MR. JENSEN:  Yes, sir.

THE COURT:  Did you go over it with Mr. Kilpatrick, your lawyer, and agree with his advice?

MR. JENSEN:  Yes, sir.

THE COURT:  Did anybody mistreat you?

MR. JENSEN:  No, sir.

THE COURT:  Do you understand by entering these two pleas you give up your right to have a jury trial?

MR. JENSEN:  Yes, sir.

THE COURT:  Are you on any medicine, prescriptions, or drugs that would in any way inhibit your thought process this morning?

MR. JENSEN:  No, sir.

THE COURT:  And you're entering this plea because you believe it's in your best interest?

MR. JENSEN:  Yes, sir.

THE COURT:  And you weren't coerced in any way to enter this plea, right?

MR. JENSEN:  No, sir.

THE COURT:  All right.  And you understand you're going to be sentenced here in just a minute to 20 years in prison plus seven years probation?

MR. JENSEN:  Yes, sir.

THE COURT:  All right. I  accept your plea, waive the PSI, adjudicate you guilty, sentence you to 20 years in the Department of Corrections to be followed by seven years probation. . . .

(Ex. E, pp. 143-45).

   C.    Rule 3.850 Hearing

Petitioner alleged in his postconviction motion that he was unable to enter an intelligent plea because of his low Intelligence Quotient ("IQ"). The Rule 3.850 court granted petitioner an evidentiary hearing on the issue, and appointed Dr. James Larson as an expert to assist the defense. (Ex. E, pp. 76, 98). Dr. Larson was directed to conduct appropriate testing for, and consider the following issues: (1) petitioner's level of intelligence, including petitioner's IQ; and (2) the effect, if any, of petitioner's level of intelligence on: (a) petitioner's ability to comprehend the nature of the charges against him and the possible penalties, (b) petitioner's susceptibility to coercion, (c) petitioner's ability to interact with counsel and assist counsel in the preparation of his defense, (d) petitioner's ability to understand his rights under the Constitution and the laws of Florida, and (e) petitioner's ability to knowingly, intelligently, and voluntarily waive those federal and state law rights. (*Id.*, pp. 98-99).

Dr. Larson testified at the state postconviction hearing that petitioner had no mental illness. (Ex. E, p. 156). Petitioner reported to Dr. Larson that he was held back in school seven times, but Dr. Larson did not verify that information. (*Id.*, p. 157). Petitioner reported to Dr. Larson that he stopped school at the seventh grade, which was inconsistent with petitioner's statement at his plea colloquy. (*Id.*, p. 169). Petitioner also reported to Dr. Larson that he was in a motorcycle accident which rendered him unconscious, (*id.*, p. 157), but Dr. Larson did not verify that information. (*Id.*, p. 168). Dr. Larson's psychological testing showed that petitioner's verbal IQ is 81, petitioner's performance IQ is 91, and petitioner's full scale IQ is 85. (*Id.*, pp. 158, 168). Dr. Larson explained that an IQ score of 70-79 is considered borderline mentally retarded, (*id.*), and that Florida law considers a score

of 70 and below mentally retarded.  (*Id*., p. 159).  Petitioner's performance IQ is in the so-called "low average" range.  (*Id*., pp. 159, 168).

Dr. Larson further testified that according to research, a person with one or more of the following characteristics is more susceptible to coercion:  (1) a person with mental illness, (2) a person who is emotionally unstable, (3) a juvenile or unsophisticated person, (4) a person of limited intellect or limited vocabulary, (5) a person who does not understand the legal process, and (6) a person who has a high score on the scale of suggestibility.  (*Id*., p. 160).  Dr. Larson conducted a "suggestibility test" on petitioner called the Gudjonson Scale of Interrogative Suggestibility.  (*Id*., p. 159).  Petitioner scored in the "very suggestible range," indicating that petitioner was more suggestible than 99 out of 100 people.  (*Id*., pp. 159-160).  Petitioner reported to Dr. Larson that during interactions with trial counsel (Mr. Kilpatrick), petitioner at times did not understand the vocabulary Mr. Kilpatrick used.  (*Id*., pp. 162-63).  Petitioner also reported to Dr. Larson that the police officers who interviewed him used several words petitioner did not understand.  (*Id*., p. 164).  Dr. Larson opined that petitioner's low verbal IQ and high suggestibility could have caused petitioner to "buy into what [was] being said" and to "be suggestible to the suggestions or directions given by that person in authority." (*Id*.).  Petitioner reported to Dr. Larson that he did not fully understand the implications of the plea form he signed at the time he signed it.  (*Id*., p. 166).  Dr. Larson testified that he did not review the particular plea form petitioner signed and was unfamiliar with the standard Okaloosa County plea form, but that the vocabulary level of other plea forms Larson had seen were higher than petitioner's reading comprehension and vocabulary.  (*Id*., p. 165).  Dr. Larson conceded that he (Larson) had no actual knowledge of:  (1) what

went on between petitioner and Mr. Kilpatrick or (2) the circumstances surrounding petitioner's signing the plea form.  (*Id*., pp. 165-66).  Dr. Larson did not speak with Mr. Kilpatrick.  (*Id*., p. 166).

On cross-examination, Dr. Larson admitted that he did not review the specifics regarding petitioner's interview with police, and that everything he (Larson) knew about the police interview came from petitioner.  (*Id*., p. 169).  The same is true as to what occurred during petitioner's meetings with Mr. Kilpatrick – petitioner was Dr. Larson's sole source of information.  (*Id*.).  Dr. Larson had no personal knowledge as to whether or not Mr. Kilpatrick took the time to simplify his words and ensure petitioner understood what Kilpatrick was saying.  Dr. Larson agreed that petitioner was motivated to underperform on his IQ testing and was also motivated to exaggerate his limitations.  (*Id*., pp. 171-72).

Mr. Kilpatrick, petitioner's trial counsel, testified that over the course of Kilpatrick's six-month representation of petitioner, counsel interacted with petitioner several times in person and through written correspondence.  (*Id*., pp. 175-76). Kilpatrick's discussions with petitioner involved the nature of the charges, the possible penalties, petitioner's confession, review of the State's discovery, possible witnesses and depositions of witnesses, and the possibility of a plea agreement.  (*Id*., pp. 175-80, 184, 187, 189-97).   After Kilpatrick reviewed the videotape of petitioner's confession and deposed the interrogating officer, Kilpatrick discussed with petitioner the significance of petitioner's confession and waiver of *Miranda* rights.  (*Id*., p. 200).   Petitioner interacted normally and intelligently with Mr. Kilpatrick.  Kilpatrick discerned no signs that petitioner did not understand the nature of the charges or what was occurring in his case.  (*Id*., pp. 178, 184, 188, 193-94,

197).  Kilpatrick discerned no signs that petitioner had issues of low intelligence, suggestibility, mental health issues, or that petitioner might be easily influenced or vulnerable to coercion.  (*Id.*, pp. 184, 187-88, 193-94, 197-98).  Kilpatrick, in his experience as a public defender, previously encountered criminal defendants with mental health issues and low intelligence levels.  Kilpatrick looked for signs of those issues at his first meeting with petitioner and throughout the course of his representation.  (*Id.*, p. 193).  Petitioner's interactions with Kilpatrick raised no red flags concerning petitioner's knowledge, understanding, or need for a psychiatric evaluation.  (*Id.*, pp. 193-94, 197).  Kilpatrick asked petitioner about his level of education.  (*Id.*, p. 194).  Petitioner advised Kilpatrick that he did not graduate from high school.  That information did not "raise any red flags" with Kilpatrick.  (*Id.*).  Kilpatrick's review of petitioner's videotaped confession evoked no questions or concerns for counsel regarding possible suggestibility, coercion, low intelligence, or lack of understanding.  (*Id.*, pp. 200, 205-06).  Petitioner was assertive and engaged with counsel throughout their interactions – petitioner asked questions, identified possible witnesses, expressed opinions on trial strategy (for example, who to depose and who not to depose), and even requested that counsel attempt to obtain a favorable plea bargain.  (*Id.*, pp. 176-79, 181, 189-92, 195-96; *see also* Ex. E, pp. 15, 16, 22, 23 (petitioner's written correspondence to counsel)).  When petitioner asked questions, the questions were appropriate and within the range of what counsel would expect a criminal defendant to ask.  (*Id.*, pp. 189).  When petitioner asked for clarification of something Mr. Kilpatrick said, counsel was able to re-phrase his explanation to petitioner's understanding without resorting to overly simplistic language.  (*Id.*, p. 194).

Mr. Kilpatrick explained to petitioner that the sexual battery count was a capital felony, and that if convicted after a trial petitioner would spend the rest of his life in prison with no possibility of parole.  (*Id*., p. 199).  The plea agreement Kilpatrick negotiated for petitioner resulted in a substantial diminishment of petitioner's prison exposure.  (*Id*.).  Mr. Kilpatrick discussed the plea agreement with petitioner more than once.  (*Id*., p. 187).  Kilpatrick did not sense any issues of suggestibility or coercion as he reviewed the plea offer with petitioner. (*Id*., pp. 186-87).  When Mr. Kilpatrick went through the written plea agreement with petitioner, Kilpatrick made tic marks on the plea form next to each section the two of them discussed.  (*Id*., p. 185).

The plea agreement contains tic marks next to particular sections, including, but not limited to:  (1) the terms of the plea agreement and sentence recommendation, (2) each constitutional rights petitioner was waiving, (3) that the judge would ask petitioner questions and petitioner's answers would be under oath subject to penalties of perjury, (4) the maximum possible penalties petitioner faced, (5) petitioner's designation as a sexual predator, and (6) additional conditions of petitioner's supervision. (*Id*., pp. 137-39).  Kilpatrick wrote "none" in the section asking whether petitioner had any drugs, alcohol, or medication of any kind in the past 24 hours.  (*Id*., p. 138).  Kilpatrick testified that when he got to the section of the plea form relating to petitioner's mental capacity, Kilpatrick asked petitioner whether he had ever been found incompetent or insane.  Petitioner responded "no."  (*Id*., p. 185).

Mr. Kilpatrick's opinion was that neither coercion nor petitioner's alleged suggestibility played a role in petitioner's signing the plea agreement.  (*Id*., p. 187).  Dr. Larson's testimony did not change Mr. Kilpatrick's opinion that petitioner fully

understood what he was entering into. (*Id.*).  Mr. Kilpatrick was asked, "At any time during your representation of Mr. Jensen did you feel that his intellectual issues prevented him from understanding what he was doing when he entered the plea?" (*Id.*, p. 198).  Mr. Kilpatrick responded, "No." (*Id.*).

Petitioner testified at the state postconviction hearing that he did not understand what *Miranda* rights were at the time he waived those rights and talked to police. (*Id.*, p. 209).  Petitioner stated that he and Mr. Kilpatrick never discussed the *Miranda* warnings, whether or not petitioner's *Miranda* waiver was coerced, or whether petitioner was coerced into confessing. (*Id.*, p. 211).  Petitioner testified that he signed the plea form, but that Mr. Kilpatrick did not go over the plea form with him. (*Id.*, pp. 209-210).  Petitioner maintained that the only thing Mr. Kilpatrick told him was that he "was going to plead to 20 years." (*Id.*, p. 210).  When petitioner was asked what, specifically, he did not understand about the plea agreement, petitioner identified that he did not know he was getting 7 years probation in addition to the 20-year prison term. (*Id.*, pp. 211-12).  Petitioner's postconviction hearing  testimony was inconsistent on the issue of whether petitioner understood the consequences of what he was doing at the time he entered his guilty pleas.  At one point petitioner testified that when he signed the plea agreement he <u>did</u> understand the nature of the charges, that his guilty plea waived his right to a trial, and that his guilty plea would result in a 20-year prison sentence.  (*Id.*, pp. 210-11).  Later, however, when petitioner's postconviction counsel asked, "Did you understand what you were actually signing and what you were waiving, what type of rights you were waiving?" Petitioner responded, "No, sir." (*Id.*, p. 213).  The Rule 3.850 judge asked petitioner whether he recalled standing in front of the judge at the plea hearing, being placed

under oath, and answering the judge's questions. (*Id.*, p. 216). Petitioner responded in the affirmative. (*Id.*). The Rule 3.850 judge went through each of the questions petitioner was asked at the plea colloquy, and each of petitioner's answers. Petitioner acknowledged his answers, (*id.*, pp. 215-16), but contended that he did not understand his sentence would involve a term of probation or designation as a sexual predator. (*Id*, p. 217). Petitioner acknowledged the tic marks on the written plea agreement, but testified that Mr. Kilpatrick did not make the marks during a discussion of the plea form. Rather, Kilpatrick made the marks after petitioner signed the form and while Kilpatrick and petitioner were standing at the podium addressing the court. (*Id.*, p. 218).

C.     Federal Review of State Court Decision

The Rule 3.850 court denied relief on this claim, explaining:

> The Defendant first alleges that he did not understand the charges against him due to his low IQ and that his plea, in effect, was involuntary. The plea colloquy shows the Defendant had a 10th grade education level and that he read and understood the plea. The Defendant said at the plea hearing that he was not being coerced into entering the plea and that he believed the plea was in his best interest. He also said that he had gone over the matter with his attorney.

> In support of the instant motion, the defense called Dr. James Larson to testify at the evidentiary hearing. Dr. Larson examined the Defendant and testified that he was below average with respect to intelligence. He was not, however, mentally retarded and there was no evidence the Defendant suffered from psychosis.

> Mr. Kilpatrick was called by the State and testified that he met with his client with respect to the charges and had gone over the discovery materials with him on various occasions. Mr. Kilpatrick said that the Defendant frequently asked questions about his case and never

indicated to him that he did not understand the charges against him. The Defendant also made suggestions with respect to who his attorney should depose and not depose. According to Mr. Kilpatrick, the Defendant behaved in an appropriate manner when they met to discuss the case.

It is axiomatic that a plea must be entered into freely and intelligently. After reviewing both the testimony at the evidentiary hearing and the transcript of the plea hearing, the court finds that the Defendant's plea was entered in a voluntary manner and that he understood the nature [and] consequences of admitting guilt.

The Court also finds that Mr. Kilpatrick went over the plea agreement with his client and otherwise represented him in a responsible manner. Although the Defendant may be of below average intelligence, the Court concludes that he is not so limited that he was incapable of understanding the charges against him or entering a knowing and voluntary plea. The Defendant's own correspondence to Mr. Kilpatrick, attached to his initial motion, further demonstrates that he had an intelligent grasp of the charges against him and was taking an active role in his defense. This claim, accordingly, is denied.

(Ex. E, pp. 131-32) (footnotes omitted). The First DCA summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has that Court ruled on a "materially indistinguishable" set of facts. Thus, the "contrary to" prong of the AEDPA standard is not implicated. The "unreasonable application" prong requires this Court to determine whether there was any reasonable basis for the state court's decision. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011); *Branch v. Sec'y, Fla. Dep't of Corr*. 638 F.3d 1353, 1354 (11th Cir. 2011). The Court will defer to the state court's factual findings and credibility determinations, because they are amply supported by the record, and because petitioner has not presented clear and convincing evidence that they are

incorrect.  28 U.S.C. § 2254(d)(2) and (e)(1); *see also Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998) (accepting state court's credibility determination and crediting trial counsel's testimony over the petitioner's).  "When a state court fails to make explicit findings, a state court's denial of the claim 'resolves all conflicts in testimony bearing on that claim against the criminal defendant.'"  *Waldrop v. Jones*, 77 F.3d 1308, 1316 (11th Cir. 1996) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 604–05, 81 S. Ct. 1860, 1880, 6 L. Ed. 2d 1037 (1961)).

The state court reasonably could have concluded that despite Dr. Larson's testimony that petitioner had a low IQ and was highly suggestible, petitioner's certifications on the plea form, petitioner's solemn declarations in open court, and Mr. Kilpatrick's testimony concerning his interactions with petitioner, demonstrate that petitioner's guilty pleas were voluntary and uncoerced, and were entered with petitioner's full understanding of the nature of the charges and possible penalties, the proceedings against him, and the consequences of pleading guilty.  The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief.

Ground 2      Counsel was constitutionally ineffective for failing to file a motion to suppress petitioner's out of court statements to police.  (Doc. 1, p. 4).

Petitioner made a statement to police in which he admitted in detail to sexually abusing the victim.  (Ex. E, p. 47-48).  Petitioner faults trial counsel for failing to move to suppress the statement on the grounds that it was "obtained illegally." (Doc. 1, p. 4).  Respondent concedes that petitioner presented this claim in the state postconviction proceeding, but argues that petitioner is not entitled to federal habeas

relief, because the state court's rejection of petitioner's claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts.  (Doc. 25, pp. 21, 25-28).

A.     Clearly Established Federal Law

Once a guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5ᵗʰ Cir. 2000).  As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (referencing *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)); *see also Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),

applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of *Strickland*'s performance prong is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56–57 (quoting *McMann v. Richardson*, 397 U.S. at 771, 90 S. Ct. 1441). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the

proceeding." *Strickland*, 466 U.S. at 693.  Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *Id.*, 474 U.S. at 58-59.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

B.    State Court Record of Petitioner's Confession

I.    Written *Miranda*[4] Waiver

Petitioner signed a "Taped Statement Form" at the outset of his interview with Fort Walton Beach Police Department Detective Curtis Pond.  The "Taped Statement Form" contained a "Miranda Warnings" section, indicating that Detective Pond read petitioner the following:

> Before I ask you any questions you must understand your rights.

---

[4]*Miranda v. Arizona*, 384 U.S. 436, 467-72, 86 S. Ct. 1602, 1624-26, 16 L. Ed. 2d 694 (1966) requires that before a person in police custody can be interrogated, he must be informed of his fifth amendment right to remain silent and also, for the purpose of protecting that fifth amendment right, of his rights to consult with counsel and to have counsel present during interrogation.

1.  You have the right to remain silent, that is, to say nothing at all.

2.  Anything you say can and will be used against you in a court of law.

3.  You have the right to talk to a lawyer and have your lawyer present with you during this interview.

4.  If you cannot afford to hire a lawyer, one will be appointed to represent you, at no cost, before any questions are asked, if you wish to have a lawyer.

5.  If you decide to answer questions now, without your lawyer being present, you have the right to change your mind at any time during questioning, and request your lawyer be present before you answer any further questions.

Do you understand these rights as I have read them to you?

(Ex. E, p. 49).  Petitioner signed and dated the "Miranda Warnings" section of the form, indicating his understanding.  (*Id*.).  The next section of the form is titled, "Waiver of Rights."  The form waiver reads, "I understand my rights.  I am willing to make a statement and answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing.  No coercion, or force of any kind has been used against me, and no promises have been made to me." (*Id*.).  Petitioner signed and dated the waiver.  (*Id*.).

ii.    Rule 3.850 Hearing

As discussed above, Dr. Larson's testing revealed that petitioner has a low IQ and is "very vulnerable to suggestion and coercion." (Ex. E, p. 168).  Dr. Larson did not give an opinion as to whether petitioner's statement to police was involuntary or coerced.  Dr. Larson admitted that he did not review petitioner's statement to Detective Pond, (*Id.*, pp. 161, 169), and that the only information Dr. Larson had

concerning the interview was what petitioner told him.  (*Id.*, pp. 161-62, 169).

Petitioner reported to Larson that he gave a statement to police before he was

arrested, and that the police officers used "a lot of words that [petitioner] didn't fully

understand." (*Id.*, pp. 161, 164).

Mr. Kilpatrick testified that he investigated the viability of a motion to suppress

by reviewing petitioner's written *Miranda* waiver, deposing Detective Pond, viewing

the three videotapes of petitioner's confession, and discussing the confession with

petitioner.  (*Id.*, pp. 179, 182-83, 189-90).  Mr. Kilpatrick reviewed the videotapes

with a specific eye for signs of involuntariness or coercion.  Counsel explained:

> I did obtain the video of his confession, which I've got extensive notes
> with regards to the confession.  Just the fact that he [petitioner] drove all
> the way from Georgia to sit down, he was read *Miranda*.   After
> reviewing my notes before this hearing, I didn't see in any of those that
> – in fact, I even wrote them in my notes, what I was actually looking for.
> Through my legal research I didn't feel that the defendant looked scared.
> The defendant does not ask to stop the tape or end the interview.
> Defendant was read his *Miranda* rights.  Officer did not promise the
> defendant anything.  I felt that filing a motion to suppress the statement,
> the confession, would have been frivolous.  I felt that I have an ethical
> obligation not to file frivolous motions on the court.

(Ex. E, pp. 182-83).  Mr. Kilpatrick further testified:

> After I did the deposition of Deputy Pond [the officer who
> conducted the interview with petitioner], on the 28th of October I felt
> whenever I saw Mr. Jensen after that, I explained to him that I felt it
> would be frivolous to file a motion to – and I gave him – because I
> remember doing legal research for him and indicated in my legal
> research that:  Confessions, in order to be admissible in evidence,
> defendant's mind at time of making confession must be free to act
> uninfluenced by either hope or fear.  Duty of the Court to determine if
> confession is freely and voluntarily made.

>    After reviewing the videos I actually made notes that defendant
>    does not look scared or in fear, does not ask to stop the tape or end
>    interview.  Defendant was read his rights to *Miranda* and officer did not
>    promise defendant anything.  I think the combined factor of reviewing
>    all of these videos and then doing depositions, then I came to the
>    conclusion that it would be frivolous to file a motion to suppress this
>    confession or statement on this Court.  I think that – like I said before,
>    I have an ethical obligation not to file these type of motions.

(*Id.*, pp. 205-06).

Mr. Kilpatrick recalled that when he discussed petitioner's confession with petitioner, petitioner had an adequate recall of the interview with Detective Pond and the statements he made to Pond.  (Ex. E, p. 190).  Petitioner asked Kilpatrick questions about the confession, and Kilpatrick answered each one to petitioner's satisfaction.  (*Id.*).

Petitioner testified at the state postconviction hearing that he did not understand what *Miranda* was at the time he was interviewed by Detective Pond. (*Id.*, p. 209).  Petitioner gained an understanding of his *Miranda* rights only after he went to prison and started working with a prison law clerk.  (*Id.*, p. 211).  Petitioner testified that, as far as he could recall, he and Mr. Kilpatrick never talked about *Miranda* warnings or whether petitioner's statement to police was coerced.  (*Id.*).

C.    Federal Review of State Court Decision

The state trial court correctly identified *Strickland* as the controlling legal standard.  (Ex. E, p. 130).  The state court denied relief on petitioner's claim, explaining:

>    The Defendant next claims that his attorney erred by not filing a
>    motion to suppress statements made by the Defendant to the police in
>    which he admitted in detail to sexually abusing the victim.  The
>    Defendant's trial attorney testified at the evidentiary hearing that he had

viewed the videotaped confession and did not believe there was a basis to file a motion to suppress.

The record also shows that the Defendant signed a form waiving his <u>Miranda</u> rights before giving the incriminating statements. Any incriminating statements, consequently, would have been admissible againsthe Defendant at trial. The Defendant, however, claims that he was vulnerable to suggestive tactics by the police and easily intimidated due to his low intelligence. The confession, he maintains, was not truly voluntary since it was the product of coercion. It should also be noted, however, that Dr. Larson did not claim that the interview conducted by the police in this case was unduly coercive.

Based on the record and the testimony presented at the evidentiary hearing, the Court finds that the defendant's statements to the police and his <u>Miranda</u> waiver were both done in a voluntary manner. Although the Defendant's intelligence level may be lower than average ,the Court specifically finds that he had the ability to understand his <u>Miranda</u> rights and made a voluntary choice to waive them. The substance of his confession, similarly, was also given in a voluntary and intelligent manner and was not the product of unlawful coercion. As such, any motion to suppress filed by defense counsel would have been denied and counsel cannot be held ineffective on this basis.

(Ex. E, pp. 132-33) (footnote omitted). The state appellate court summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts. Accordingly, this Court proceeds to AEDPA's "unreasonable application" prong to consider whether there was any reasonable basis for the state court's decision. The Court defers to the state court's factual findings and credibility determinations, because they are amply supported by the record, and because petitioner has not presented clear and convincing evidence that they are incorrect.

The state court reasonably could have concluded that trial counsel's failure to

file a motion to suppress was a reasonable tactical decision.  There is a two-part inquiry for determining whether a defendant has knowingly and voluntarily waived his rights under *Miranda*:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986).  The Supreme Court has long taken into account the personal characteristics of the defendant in determining whether his will was overborne in the giving of an incriminating statement.  One of the factors taken into account is the defendant's mental capacity.  *See, e.g., Fikes v. State of Ala.*, 352 U.S. 191, 77 S. Ct. 281, 1 L. Ed. 2d 246 (1957) (less than third grade education); *Culombe v. Connecticut*, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961) (mental defective).  While the defendant's mental capacity is a consideration in determining voluntariness, it is "relevant only in establishing a setting in which actual coercion might have been exerted to overcome the will of the suspect."  *Procunier v. Atchley*, 400 U.S. 446, 453–54, 91 S. Ct. 485, 27 L. Ed. 2d 524 (1971).  Absent actual coercion, even a person with mental disorders or a low IQ can be found to have confessed voluntarily.  *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520, 93 L. Ed. 2d 473 (1986) ("Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus.  But this fact does

not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'") (citation omitted); *see id.*, 479 U.S. at 165, 107 S.Ct. at 521 ("Our 'involuntary confession' jurisprudence is entirely consistent with the settled law requiring some sort of 'state action' to support a claim of violation of the Due Process Clause of the Fourteenth Amendment."); *see, e.g., Moore v. Dugger*, 856 F.2d 129, 132 (11th Cir. 1988) (mental deficiencies, in the absence of police coercion, are not sufficient to establish involuntariness; the fact that defendant was generally calm and responsive during the interrogation, that he did not appear confused, and that he understood the questions put to him established a valid waiver of *Miranda* rights, despite defendant's low IQ); *Dunkins v. Thigpen*, 854 F.2d 394, 399 (11th Cir. 1988) (holding that although "[m]ental illness is a factor to be considered by the trial court, mental retardation does not by itself prevent a defendant from voluntarily [and intelligently] waiving his [*Miranda* ] rights."); *United States v. Cox*, 509 F.2d 390 (D.C. Cir. 1974) (holding *Miranda* waiver valid despite defendant's fifth grade education, where defendant demonstrated to the court that he could read and discuss the *Miranda* warnings); *United States v. White*, 451 F.2d 696, 700 (5th Cir. 1971) (holding *Miranda* waiver valid despite the defendant's "below average I.Q., fifth grade education, [and] poor reading ability," where officers read the defendant his *Miranda* rights).

Mr. Kilpatrick performed a reasonable investigation of the circumstances surrounding petitioner's confession, and reasonably applied the proper legal guidelines in determining that there was no good-faith basis to argue for suppression. (Ex. E, pp. 182-83, 200, 205-06).  It is true, as petitioner asserts, that Dr. Larson

testified that petitioner has a low IQ and is highly suggestible, but petitioner presented no evidence that Mr. Kilpatrick perceived, or reasonably should have perceived during Kilpatrick's representation of petitioner, that petitioner lacked the mental capacity to make a knowing and intelligent waiver of his *Miranda* rights.  Mr. Kilpatrick testified that his interactions with petitioner did not suggest petitioner lacked the capacity to understand his rights and the consequences of waiving them. Petitioner did not present any evidence that his speech or behavior on the videotape suggested a lack of understanding or lack of mental capacity to make a valid waiver. Mr. Kilpatrick knew petitioner did not graduate from high school, but that, alone, did not signal a need for investigation into petitioner's mental capacity, especially in light of petitioner's normal and intelligent interactions with Mr. Kilpatrick, and Mr. Kilpatrick's observation of petitioner's speech and behavior during the videotaped interview.   Further, petitioner presented no evidence that either the discovery materials or any other information available to Mr. Kilpatrick indicated that petitioner's *Miranda* waiver or confession was coerced.

The state court reasonably found that counsel made a tactical decision not to file a motion to suppress, and reasonably concluded that counsel's tactical decision was within the wide range of competent conduct.  *See Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) (holding that a tactical decision is ineffective only "if it was so patently unreasonable that no competent attorney would have chosen it."). The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief.

<u>Ground 3</u>     Trial counsel was ineffective for "coercing petitioner to enter a guilty plea based upon threats of quitting petitioner's case, he would get life, and would be castrated."  (Doc. 1, p. 5).

Petitioner claims Mr. Kilpatrick coerced him into entering a plea under threats of withdrawing from petitioner's case, life imprisonment and castration if petitioner went to trial.  Respondent contends petitioner is not entitled to federal habeas relief, because the state court's rejection of petitioner's claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts in light of the evidence at the state court proceeding.  (Doc. 25, pp. 21, 28-29).

A.     Clearly Established Federal Law

The clearly established federal law governing challenges to guilty pleas based upon allegations of ineffective assistance of counsel is set forth above.

B.     Rule 3.850 Hearing

Mr. Kilpatrick testified that petitioner wanted to secure a negotiated plea from the outset of his case.  Mr. Kilpatrick was appointed to represent petitioner in early May of 2004.  (Ex. E, p. 188).  On May 24, 2004, petitioner wrote Mr. Kilpatrick, stating: "I'm requesting to have an early plea date, please.  See what the best plea bargain you can get me.  I would like to see you as soon as possible on the matter.  Thank you. I am asking for a rehearing for bond, too, so I can plead out to my case.  Your time and help in my case will be greatly appreciated." (*Id*., pp. 195-96).  Mr. Kilpatrick met with petitioner on May 27, 2004, and discussed petitioner's case.  After conducting discovery, Mr. Kilpatrick attempted to initiate plea negotiations with the prosecutor on September 13, 2004, but the prosecutor was unable to offer a plea bargain at that time due to the seriousness of petitioner's case.  (*Id*., p. 196).  Mr. Kilpatrick denied that he threatened petitioner in any way:

Q [Assistant State Attorney]:  [D]id you discuss with [petitioner] that if the defendant insisted on going to jury trial that you would consider withdrawing from his case?

A:  [Mr. Kilpatrick]: He never insisted on going to a jury trial, so I would say no.

Q: Is an assistant public defender able to withdraw from someone's case simply because the defendant wants a trial?

A: No, we're not.

. . . .

THE COURT:  Mr. Kilpatrick, in his pro se motion for 3.850 relief at one point he says you told him that if he didn't enter this plea deal he would spend the rest of his life in prison and be castrated.  Is that –

THE WITNESS [Mr. Kilpatrick]:  That's not correct, your Honor.

THE COURT:  That's not a correct statement.

THE WITNESS:  The law doesn't allow castration.

THE COURT:  Correct.  Typically as part of an attorney's discussion with his client in this type of case where you have a capital sexual battery with a minor under 12 and an adult as old as he is, do you go through the scenario of explaining to them what a conviction means as f[a]r as life as opposed to a negotiated plea perhaps for something around 20 years plus the probation?

THE WITNESS:  Yes, sir, I do.  I explain to all my clients if they're charged with a punishable by life felony that in Florida there is no parole.  Life means life.  That means that you will spend the rest of your life in prison.  I believe that's what I spoke to with Mr. Jensen to make sure he understood the ramifications of his decision and not mine.

THE COURT:  Did the negotiated plea that was ultimately arrived at and agreed to by him result in a substantial diminishment of exposure in prison time to him?

THE WITNESS:  Yes, sir.

(*Id*., pp. 197-99).  Mr. Kilpatrick testified that he did not believe suggestibility or coercion played a role in petitioner's decision to plead guilty.  (Ex. E, p. 187).

C.     Federal Review of State Court Decision

The state court denied relief on this claim, explaining:

The Defendant next alleges that he was coerced  by his attorney into entering a plea, who told him he could spend the rest of his life in prison and be castrated if he went to trial and was found guilty.

Mr. Kilpatrick testified that, during the course of his representation, the Defendant expressed his desire to enter a plea to the charges against him.  Mr. Kilpatrick also said at the evidentiary hearing that he went over the plea with the Defendant on multiple occasions before submitting it to the Court.  Mr. Kilpatrick added that he never told the Defendant that the judge would deny a motion to suppress because of a recent death in his family.  Mr. Kilpatrick testified that he did not tell the Defendant that he would withdraw from the case if he proceeded to trial rather than enter a plea.

Based on all of the available evidence, Court finds that the Defendant was not coerced enter [sic] into entering a plea.  Instead, the evidence demonstrates that the Defendant entered a plea only after careful consultation with his attorney.  The Court also finds that Mr. Kilpatrick's effort to secure a plea, as opposed to going to trial, was reasonable in light of the evidence against his client.  By entering into a plea agreement, the Defendant avoided the possibility of being sentenced to life in prison had he been found guilty by a jury.

The Court also accepts Mr. Kilpatrick's testimony that he did not tell his client that his motion would be denied based on a death in the

judge's family or that he would be castrated if he went to trial. As previously noted, the Defendant said at the plea colloquy that no one was coercing him into entering a plea. The fact that the Defendant may now regret his initial decision to enter a plea is not a sufficient basis to allow him to withdraw his plea. This claim, therefore, is denied.

(Ex. E, pp. 133-34).

The state trial court correctly identified *Strickland* as the controlling legal standard. (Ex. E, p. 130). The Supreme Court has not addressed a claim precisely like petitioner's, nor has it ruled on a "materially indistinguishable" set of facts. Accordingly, this Court proceeds to AEDPA's "unreasonable application" prong to consider whether there was any reasonable basis for the state court's decision. The Court defers to the state court's factual findings and credibility determinations, because they are amply supported by the record, and because petitioner has not presented clear and convincing evidence that the findings are incorrect.

The state court reasonably credited Mr. Kilpatrick's testimony and found that: (1) counsel did not threaten to withdraw from petitioner's case if petitioner insisted on going to trial; (2) counsel did not tell petitioner he would be castrated if found guilty after a trial; and (3) counsel's advice that petitioner would spend his life in prison if found guilty by a jury of capital sexual battery was not a threat, but a statement of the actual consequences petitioner faced if he went to trial and was found guilty of the charged offense. The record of the plea proceeding also contradicts petitioner's claim that Mr. Kilpatrick coerced or threatened petitioner. The trial judge asked petitioner if anyone had mistreated him or coerced him in any way to enter his plea. Petitioner responded, "No, sir" to each question. (Ex. E, p. 144). The trial judge asked petitioner if he was entering his plea because he believed it was in his best interest. Petitioner responded, "Yes, sir." (*Id.*). Based on the Rule 3.850 court's

findings and the state court record, it was not unreasonable to reject petitioner's claim of a coerced guilty plea arising from counsel's alleged threats and coercion.

The state court's denial of relief on petitioner's claim was consistent with clearly established federal law and was based on a reasonable determination of the facts. Petitioner is not entitled to federal habeas relief.

Ground 4    Counsel was ineffective for failing to request a speedy trial. (Doc. 1, p. 5).

Petitioner claims trial counsel was ineffective and denied petitioner his right to a speedy trial when he "ignored" petitioner's repeated demands for a speedy trial. (Doc. 1, p. 5). Respondent asserts that to the extent petitioner faults counsel for failing to assert petitioner's rights under Florida's speedy trial rule, petitioner is not entitled to relief, because the state court's rejection of this claim was consistent with clearly established federal law. (Doc. 25, p. 30). Respondent argues that to the extent petitioner attempts to raise a constitutional speedy trial claim, the claim is procedurally defaulted. (*Id.*).

A.    Clearly Established Federal Law

The clearly established federal law governing challenges to guilty pleas based upon antecedent constitutional infirmities and alleged ineffective assistance of counsel is set forth above.

B.    State Court Record

Mr. Kilpatrick was the only witness to provide testimony on this issue. The state postconviction judge asked Mr. Kilpatrick if petitioner ever asked him to demand a speedy trial. (Ex. E, p. 199). Mr. Kilpatrick responded:

> THE WITNESS:   There was correspondence later on that he was requesting, what is speedy trial? Am I entitled to speedy trial? Then I

> went up to the jail and explained to Mr. Jensen that we continued the
> case already once, so we waived speedy trial and he understood that. I
> believe that – I mean, six months, that would have been within the
> speedy trial, 175 days plus 15 roughly.

(*Id*., pp. 199-200). The trial court docket sheet reveals that the defense filed a motion
to continue on September 23, 2004 and October 14, 2004. (Ex. E, Docket Sheet Items
21, 26; *see also* Ex. E, p. 24).

C.    Federal Review of State Court Decision

The state trial court denied relief on this claim, explaining:

> [T]he Defendant claims in this ground that his attorney failed to respond
> to his request that he move for speedy trial. Mr. Kilpatrick testified that
> the Defendant had asked whether they should move for a speedy trial.
> Mr. Kilpatrick, however, informed the Defendant that he had recently
> moved for a continuance to prepare for this case. As the decision to
> move for a continuance was a reasonable strategic decision made by trial
> counsel, it cannot serve as a basis for a claim for ineffective assistance.
> Furthermore, the Defendant cannot demonstrate prejudice on this issue.
> There is no evidence, for example, that the State was unprepared to go
> to trial had counsel insisted on a speedy trial. Lacking any evidence of
> prejudice, the claim that counsel erred by not moving for a speedy trial
> is denied.

(Ex. E, p. 135). The state appellate court summarily affirmed.

The Supreme Court has not addressed a claim precisely like petitioner's, nor
has it ruled on a "materially indistinguishable" set of facts. Accordingly, this Court
proceeds to AEDPA's "unreasonable application" prong to consider whether there
was any reasonable basis for the state court's decision.

The state appellate court reasonably could have rejected petitioner's claim on
the grounds that petitioner's valid guilty pleas waived petitioner's right to challenge
counsel's conduct on the speedy trial issue. Petitioner's claim that counsel was

ineffective for failing to move for a speedy trial in no way implicates the validity of petitioner's pleas.  The record of petitioner's plea proceeding demonstrates that petitioner's pleas were knowing, intelligent and voluntary, and petitioner does not suggest that counsel's failure to move for a speedy trial played any role in his decision to plead guilty.  As counsel's alleged error did not impact the knowing and intelligent nature of petitioner's pleas, the alleged error cannot provide a basis to overturn petitioner's convictions.  *See Tollett*, 411 U.S. at 267 ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.");  *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984) (per curiam) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process.").

Alternatively, the state appellate court reasonably could have rejected petitioner's claim because petitioner failed to establish deficient performance and prejudice under *Strickland*.  The state trial court correctly identified *Strickland* as the controlling legal standard, (Ex. E, p. 130), and reasonably concluded that Mr. Kilpatrick's decision to request a continuance was a reasonable strategic decision. Petitioner fails to show that no reasonable attorney would have moved for a continuance in the same circumstances.  Petitioner also fails to show that there is a reasonable probability the result of his criminal proceeding would have been different

absent counsel's alleged error.  The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief.

<u>Ground 5</u>      "Counsel was ineffective when failing to familiarize himself with petitioner's case to prepare petitioner's case for trial."  (Doc. 1, p. 8).

Petitioner alleges that counsel "never prepared petitioner's case for trial, depriving petitioner of obtaining a trial as guaranteed under the U.S. Constitution." Petitioner asserts that trial counsel's "lack of preparation . . . forced petitioner with various  methods to plead out."  (*Id*.).  Respondent responds with three arguments. First, to the extent petitioner raises the same claim he presented to the state court as Ground IV of his Rule 3.850 motion – that trial counsel failed to interview or depose various witnesses – petitioner's claim is procedurally defaulted, because petitioner expressly abandoned this issue in his appeal of the order denying postconviction relief.  (Doc. 25, pp. 35, 37; *see also* Ex. G, p. 26).  Second, to the extent petitioner raises the same claim he presented to the state court as Ground VI of his Rule 3.850 motion – that but for trial counsel's failure to "familiarize[ ] himself with the facts and law surrounding his case," petitioner would not have entered a plea – petitioner's claim is procedurally defaulted, because the state court  denied relief on an independent and adequate state procedural-bar ruling (that the claim was insufficiently pled).  (*Id*., pp. 35, 37-38).  Third, reviewed *de novo*, petitioner's allegations are facially insufficient to establish deficient performance or prejudice under *Strickland*.  Thus, this claim provides no basis for an evidentiary hearing or federal habeas relief.  (*Id.*, pp. 38-39).  Petitioner does not offer a response to respondent's argument, or further elucidate his claim.  (Doc. 32).

A.    Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[5] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of his claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119

---

[5]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court also considers a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

Respondent is correct that to the extent petitioner seeks relief for counsel's alleged failure to interview or depose various witnesses (Ground IV of petitioner's Rule 3.850 motion), petitioner is not entitled to federal habeas review, because petitioner procedurally defaulted this claim by abandoning it in his Rule 3.850 appeal. (*See* Ex. G, p. 26 (stating with regard to petitioner's claim that counsel failed to interview and depose various witnesses: "Appellant abandons this issue where said claim is frivolous.")). *See also Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that petitioner, who received an evidentiary hearing on his Rule 3.850 motion, procedurally defaulted his ineffective assistance claim when he failed to argue it in his initial brief on appeal from the denial order and therefore abandoned it); *Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007) (stating that had the petitioner received an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those issues, and they would be considered procedurally defaulted).

Respondent is incorrect when he argues that to the extent petitioner seeks relief for counsel's failure to familiarize himself with the facts and law surrounding his case (Ground VI of petitioner's Rule 3.850 motion), the claim is procedurally defaulted. The state court's summary denial of relief as insufficiently pled does not constitute an independent and adequate state procedural-bar ruling. *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 1141, 175 L. Ed. 2d 978 (2010). In *Owen*, a federal habeas petitioner raised an ineffective assistance of appellate counsel claim, after presenting the same claim in a state habeas application filed in the Florida Supreme Court. The Florida Supreme Court denied relief because the claim was insufficiently pled in that Owen did not identify any

specific evidence in the record to support it.[6]  In Owen's federal habeas proceeding, the State asserted a procedural default defense, arguing that the state court's rejection of the claim was an independent and adequate state procedural-bar ruling which barred federal habeas review.  The Eleventh Circuit rejected this argument and held that the Florida Supreme Court's ruling was on the merits.  *Id*. at 913 ("The Florida Supreme Court's . . . insistence upon specific record evidence showing that appellate counsel's interests were actively compromised constitutes a ruling on the merits of Owen's claim.  Thus, Owen's [appellate-counsel] conflict-of-interest claim is not procedurally barred from federal habeas review.").

The same reasoning applies here.  Petitioner raised this ground of ineffective assistance in his Rule 3.850 motion.  The Rule 3.850 court denied relief, explaining:

> The Defendant claims here that had his trial attorney "familiarized himself with the facts and laws surrounding his case" he would not have entered a plea.  As this ground contains mere conclusory allegations, it is facially insufficient and the court summarily denies this claim without the need for an evidentiary hearing.

(Ex. E, p. 77) (footnote omitted).  Petitioner sought review of this ruling in his Rule 3.850 appeal.  (Ex. G, pp. 29-30).  The state appellate court summarily affirmed.  The state court's ruling is substantially the same as that at issue in *Owen*.  The state court's ruling here was not a state procedural-bar ruling – it was a ruling on the merits.

---

[6]The Florida Supreme Court stated:

Owen fails to identify specific evidence in the record which shows that his interests were compromised.  Owen only states "conflict existed because appellate counsel could not raise his own ineffectiveness and could not raise the fact that Owen had filed a bar complaint"; thus, Owen's claim is insufficiently pled and relief is therefore denied.

*Owen v. Crosby*, 854 So.2d 182, 194 (Fla. 2003).

Petitioner's claim is fully exhausted and not procedurally defaulted.

      B.    Clearly Established Federal Law

The clearly established federal law governing challenges to guilty pleas based upon allegations of ineffective assistance of counsel is set forth above.

      C.    Federal Review of State Court Decision

The state court summarily denied relief on this claim, as set forth above. Although the state court did not delineate this issue as one justifying an evidentiary hearing, the court received testimony on what Mr. Kilpatrick did to prepare petitioner's case for trial.  Mr. Kilpatrick testified that he reviewed the probable cause addendum; filed a demand for discovery and reviewed the State's discovery; conducted legal research on the viability of a motion to suppress; reviewed petitioner's videotaped confession; deposed seven potential witnesses; forwarded all of the State's discovery to petitioner for petitioner' review; and met with petitioner to discuss petitioner's case, review the State's discovery, review the issue of petitioner's confession and other evidence, discuss the depositions, and discuss the ramifications of a conviction after a jury trial.  (Ex. E, pp. 176, 178-80, 189-93).  Petitioner fails to explain how this conduct was unreasonable, or what more counsel should have done to "prepare" petitioner's case.  Counsel's actions with regard to filing a motion to suppress, demanding a speedy trial, and interviewing and deposing witnesses were discussed (and rejected) above.  Further, petitioner fails to allege reasonably specific, non-conclusory facts showing in what way counsel's alleged failure affected petitioner's case such as to undermine confidence in its outcome.  Thus, petitioner fails to demonstrate that he suffered prejudice.

The state court's rejection of petitioner's claim was not contrary to, and did not

involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the conviction

and sentence in *State of Florida v. William Thomas Jensen* in the Circuit Court for Okaloosa County, Florida, Case No. 04-CF-1027 be DENIED, and the clerk be directed to close the file.

    2.  That a certificate of appealability be DENIED.

    At Pensacola, Florida this 7th day of November, 2011.

*/s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).